[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated November 6, 2001, the plaintiff, Lyn Oliva commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel and filed an answer and cross-complaint dated October 22, 2001. Both parties appeared with counsel on October 23rd, 24th and 25th
2002 and the plaintiff proceeded on her complaint. The parties presented testimony and introduced documentary evidence. The court, after hearing the testimony and reviewing the exhibits makes the following findings of fact.
The plaintiff, whose maiden name was Lyn Oliva, married the defendant on January 24, 1999 in Avon, Connecticut. She has resided continuously in the State of Connecticut for at least twelve (12) months next preceding the filing of the complaint. All statutory stays have expired. No minor children have been born to the plaintiff since the date of the marriage. The court further finds that neither party have been the recipients of any aid from the State of Connecticut or any municipality thereof.
The parties have been married for 3 years and 10 months. They separated on October 30, 2001 and have lived separate and apart ever since. They were also separated for the period February 24, 2000 to May, 2000. During said period the plaintiff filed an action for a dissolution of marriage which she subsequently withdrew.
The plaintiff is 45 years old and appears to be in good health. The defendant is 47 years and has high blood pressure and elevated cholesterol but otherwise appears to be in good health. Each of the parties had substantial assets at the time of the marriage and as of the dates of trial. The plaintiffs family owns a plantation in Georgia and the defendant's family owns a number of Inns and hotels in the Farmington Valley as well as Avon Plumbing and Heating.
The plaintiff is presently employed as a Prevention Specialist for the CT Page 16068 Hartford Board of Education. Her total net weekly income amounts to $1,101 consisting of $136 from her employment and the balance from interest and dividends. In 1979 she graduated with a 4 year degree from the University of New Hampshire majoring in Political Science. She also matriculated at the University of Hartford in 1996-1997 as a psychology major. She was married twice before her marriage to the defendant. Her first marriage ended in 1993 by dissolution and her second marriage ended in 1996 by dissolution after 2 months. She has 2 daughters from her first marriage. The oldest, age 20 attends Trinity College. The youngest, age 17 attends Westminster and expects to begin college in August/September of 2003.
The defendant is presently employed at Avon Plumbing and Heating, a firm in which he has an ownership interest with his brother and other family members. His total net weekly income amounts to $3,543 consisting of $1,222 from his employment and $2,312 from his business interests. In 1973 he attended Marietta College and in 1974-1975 attended Worcester Polytechnic Institute for a total of 3 years of college. He was married once before his marriage to the plaintiff. His first marriage was dissolved in 1990. He has a son from his previous marriage who is 21 years old and attends Colby College.
The parties met in October of 1997 when the defendant responded to a call from the plaintiff who was in need of plumbing repairs on a home she owned at 7 Pine Hill Road in Avon. Their family backgrounds could not have been more different. The plaintiffs mother was a heavy drinker and abusive. Her father was "inappropriate" with her. Despite her upbringing she has managed to lead a genteel life and has been very active in the Greater Hartford Arts Community and the Connecticut Childrens Medical Center. Prior to meeting the defendant she had accumulated a substantial amount of assets. On the other hand the defendant worked from an early age in the plumbing and heating business owned by his family. Each family member worked long hours and collectively now own millions of dollars worth of property. The plaintiffs family members are very close and most are active in the businesses.
In the fall of 1998 the parties became engaged. The plaintiff sold her home on Pine Hill Road and ultimately moved in with the defendant. The defendant owned a home at 50 Gracey Road in Canton and an adjoining lot which is still retained in the defendants' name. The property had been owned by the defendant since 1980. The home and lot are bounded by the Canton Nature Preserve. The court finds that the fair market value of 50 Gracey Road at the time of their marriage was $375,000 encumbered by a mortgage in the amount of $125,000. The parties married on January 24, 1999 and embarked on major renovations to 50 Gracey Road. On May 6, 1999 CT Page 16069 the defendant changed the title to the property and put it in the joint names of he and his wife. The plaintiff contributed $714,000 towards the renovations and the defendant contributed $66,554 cash and $247,058 in fixtures, supplies, labor and non-cash contractor discounts. On January 11, 2000 the parties jointly borrowed $500,000 secured by a first mortgage on the property, paid off the existing mortgage and the plaintiff received $373,572. The current mortgage balance is $485,759. It is a three (3) year ARM, 30 year term with an initial interest rate of seven (7%) percent. The parties have stipulated to these facts and further stipulated that the current fair market value of 50 Gracey Road is $850,000.
The plaintiff seeks immediate title to 50 Gracey Road excluding the adjoining lot and will remove the defendant's name from the existing mortgage by refinancing within four (4) months from the date of dissolution. She also seeks the defendant to pay COBRA coverage for one (1) year and $25,000 towards her counsel fees. The defendant also seeks title to the property but would allow the plaintiff and her daughter to continue to occupy the property until the daughter graduates from high school with both parties sharing in the cost of maintaining the same. The defendant further offers to give the plaintiff $175,000 and will refinance the property and remove the plaintiffs name from the mortgage within ninety (90) days after she vacates.
The parties are in agreement to waive alimony, retain all assets titled in their own names and to pay all debts listed on their respective financial affidavits. They are also in agreement as to the manner in which they will divide their personal property.
In view of the parties proposed orders the paramount issue during trial was who was at fault for the breakdown of the marriage. The court finds that portions of the testimony of both parties was less than credible. Essentially the plaintiffs testimony revolved around her efforts to improve the property, the behavior of the defendant, and her claim that the defendant wiretapped her phone. On the other hand the defendant testified as to his contributions towards the renovation. He took the Fifth Amendment with respect to the wiretap issue.
The plaintiff described 50 Gracey Road as an old farmhouse before the renovations and introduced a picture of the kitchen to show the "before" condition. However, in later testimony the court finds the picture was actually taken in the early 80's and the kitchen had undergone several changes over the years. She further testified that her role in the renovations was paramount to the defendant's but the court finds that each of the parties made substantial contributions. Both parties agreed CT Page 16070 that they had "overbuilt". The court finds that some of the overbuilding was as a result of the plaintiffs desire to have room for the "grandchildren". She further claimed that the defendant engaged in numerous occasions of socially unacceptable behavior but the court finds that many of the claims she made occurred before marriage. While the parties lived together the plaintiff testified credibly that the defendant was verbally abusive. However, when asked when her marriage broke down irretrievably she testified that it happened from the day the parties married which was well before any claim of wiretapping by the defendant.
The court has computed the financial impact of the proposed orders with respect to 50 Gracey Road. If the court accepts the plaintiffs proposal she will receive a gain of $23,816 ($850,000 present fair market value less the balance of her cash investment $340,425 and the existing mortgage balance $485,759) and the defendant will sustain a loss of his original net equity of $250,000, his cash of $65,554 and other costs of $69,020 (exclusive of non-cash contractor discounts) for a total loss of $384,574.
If the court accepts the defendant's proposal the plaintiff would sustain a loss of $165,425 (balance of her investment $340,425 less payment by defendant of $175,000) and the defendant would sustain a loss of $195,333 ($850,000 present fair market value less his original equity of $250,000, other costs of $69,020, cash contributions of $65,554, existing mortgage balance of $485,759 and payment to plaintiff of $175,000).
The court cannot put the parties back into their respective financial positions pre-marriage. The marital home is substantially overbuilt. Much, but not all of the overbuilding is a result of the plaintiff wanting her "dream house" to accommodate her children and her possible grandchildren. The court computes the "overbuilding" factor to be $361,758. This loss should not be borne by the defendant alone. The court cannot split the only asset in dispute. The court finds that both parties are to blame for the breakdown of the marriage. Further, the court draws an adverse inference with respect to the defendant claiming the Fifth Amendment with respect to the wiretap issue
The court has considered all of the statutory criteria set forth in Connecticut General Statutes Sections 46b-81 and 46b-64. Judgment of dissolution of marriage shall enter on the grounds of irretrievable breakdown. It is further ordered that:
1. Within 7 days from the date of judgment the plaintiff shall quit-claim all of her right, title and interest in 50 Gracey Road, CT Page 16071 Canton, Connecticut to the defendant. The quit-claim deed shall be held in escrow by the plaintiffs attorney until the receipt by the plaintiff of the monies to be paid to her by the defendant as hereinafter set forth are received in full at which time the quit-claim deed shall be released to the defendant's attorney.
2. Within 3 months from the date of judgment the defendant shall pay to the plaintiff the sum of $250,000 in full satisfaction of the plaintiffs interest in the property.
3. Within 4 months from the date of judgment the defendant shall refinance the existing first mortgage to remove the plaintiffs name therefrom.
4. The plaintiff and her daughters may continue in occupancy until August 31, 2003. The plaintiff shall pay 50% of all occupancy costs including the mortgage (but in no event greater than 50% of the existing mortgage), real estate taxes and insurance and 100% of the cost of all utilities including telephone and cable TV. The defendant shall be responsible for all snow removal, lawn service including mowing, maintenance of trees, shrubs and flower beds and all interior and exterior repairs and maintenance. All repairs in excess of $500 shall be at the sole discretion of the defendant.
5. Each party shall retain any personal property he or she brought into the marriage or acquired with his or her individual monies during the marriage. Any personal property acquired during the marriage with joint funds shall be divided by mutual agreement. Absent an agreement, the parties shall submit the dispute to an agreed third party for binding arbitration. The cost for said third party arbitration shall be paid fifty (50%) by the plaintiff and fifty (50%) by the defendant.
6. The defendant shall facilitate COBRA coverage for plaintiff for a period of 1 (one) year at the plaintiffs expense.
7. The plaintiffs request for attorneys fees is denied.
BY THE COURT
___________________ CARUSO, J. CT Page 16072